(No. 91329.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. CHAD HILL, Appellee.

*Opinion filed May 23, 2002.*

James E. Ryan, Attorney General, and John Schmidt, State's Attorney, both of Springfield (Joel D. Bertocchi, Solicitor General, and William L. Browers and Domenica A. Osterberger, Assistant Attorneys General, of Chicago, of counsel), for the People.

Daniel D. Yuhas, Deputy Defender, and Susan M. Wilham and Robert N. Markfield, Assistant Defenders, of the Office of the State Appellate Defender, of Springfield, for appellee.

JUSTICE KILBRIDE delivered the opinion of the court:

In this case, we review the circuit court's finding that section 12—11(a)(3) of the Criminal Code of 1961 (Code) (720 ILCS 5/12—11(a)(3) (West Supp. 1999)), as amended by Public Act 91—404 (Pub. Act 91—404, § 5, eff. January 1, 2000), violates the separation of powers clause and the proportionate penalties clause of the Illinois Constitution. Section 12—11 of the Code contains one of the so-called "15/20/25-life" mandatory add-on sentences implemented by our legislature.

In March 2000, the State filed an information alleging that defendant, Chad Hill, committed the offense of home invasion while armed with a firearm in violation of section 12—11(a)(3). In October 2000, defendant filed a motion to dismiss the information, primarily arguing that section 12—11(a)(3) violates the Illinois Constitution's separation of powers clause (Ill. Const. 1970, art.

II, § 1) and the proportionate penalties clause (Ill. Const. 1970, art. I, § 11).

In March 2001, the circuit court heard defendant's motion and verbally indicated that it would find the amended statute unconstitutional on both bases and that a written order would follow. In April 2001, the court granted defendant's motion and issued written findings. We reverse and remand.

## I. ANALYSIS

This court has a duty to affirm a statute's constitutionality and validity if reasonably possible. *People v. Lee*, 167 Ill. 2d 140, 144 (1995). Legislative enactments, including those that impose criminal penalties, are entitled to a presumption of constitutionality. See *People ex rel. Carey v. Bentivenga*, 83 Ill. 2d 537, 542 (1981). A party challenging a statute bears the burden of proving its invalidity. *Lee*, 167 Ill. 2d at 144. A circuit court's finding that a statute is unconstitutional is reviewed *de novo*. See *People v. Malchow*, 193 Ill. 2d 413, 418 (2000).

The applicable version of section 12—11 of the Code, as amended by Public Act 91—404, establishes the crime of home invasion in pertinent part as follows:

"(a) A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present or he or she knowingly enters the dwelling place of another and remains in such dwelling place until he or she knows or has reason to know that one or more persons is present and

(1) While armed with a dangerous weapon, other than a firearm, uses force or threatens the imminent use of force upon any person or persons within such dwelling place whether or not injury occurs, or

(2) Intentionally causes any injury, except as provided in subsection (a)(5), to any person or persons within such dwelling place, or

(3) While armed with a firearm uses force or threatens the imminent use of force upon any person or persons within such dwelling place whether or not injury occurs, or

(4) Uses force or threatens the imminent use of force upon any person or persons within such dwelling place whether or not injury occurs and during the commission of the offense personally discharges a firearm, or

(5) Personally discharges a firearm that proximately causes great bodily harm, permanent disability, permanent disfigurement, or death to another person within such dwelling place.

\*\*\*

(c) Sentence. Home invasion in violation of subsection (a)(1) or (a)(2) is a Class X felony. A violation of subsection (a)(3) is a Class X felony for which 15 years shall be added to the term of imprisonment imposed by the court. A violation of subsection (a)(4) is a Class X felony for which 20 years shall be added to the term of imprisonment imposed by the court. A violation of subsection (a)(5) is a Class X felony for which 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court." 720 ILCS 5/12—11 (West Supp. 1999).[1]

Defendant attacks section 12—11(a)(3)'s validity on two general bases. First, defendant points to article II, section 1, of the Illinois Constitution, commonly referred to as the separation of powers clause. This clause states that "[t]he legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1. Defendant asserts that section 12—11(a)(3), by imposing mandatory add-on sentences, violates the separation of powers clause because it divests the circuit court of its

---

[1]We note that, subsequent to the amendment at issue here, the legislature amended the home invasion statute again in Public Act 91—928 (Pub. Act 91—928, § 5, eff. June 1, 2001). That amendment occurred after defendant's alleged conduct occurred and, in any event, does not impact the issues in this case.

discretionary power to consider aggravating and mitigating circumstances.

Second, defendant relies on article I, section 11, of the Illinois Constitution, commonly referred to as the proportionate penalties clause. This clause states in pertinent part that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. Defendant contends that section 12—11's add-on sentencing scheme violates the proportionate penalties clause because it imposes a penalty that is cruel, degrading, and shocking to the moral conscience. Defendant further contends that section 12—11 is unconstitutional because it mandates a penalty more severe than that imposed for more serious crimes.

As a threshold matter, we note that defendant asks us to review section 12—11's add-on sentencing scheme in its entirety. Citing *People v. Palkes*, 52 Ill. 2d 472 (1972), defendant argues that section 12—11's unconstitutional infirmities are so pervasive as to render the entire statute invalid. We reject defendant's request. A defendant does not ordinarily have standing to challenge a statute as it might be applied to others in different circumstances. *People v. Falbe*, 189 Ill. 2d 635, 644 (2000). Defendant was charged under section 12—11(a)(3) (carrying a 15-year add-on sentence) and therefore defendant has no standing to challenge section 12—11(a)(4) (carrying a 20-year add-on sentence) and section 12—11(a)(5) (carrying a 25-year-to-life add-on sentence).[2] As we shall discuss, we find no infirmities present in section

---

[2]We are mindful that section 12—11(c) of the Code (720 ILCS 5/12—11(c) (West 2000)) actually contains section 12—11's sentencing provision. For purposes of clarity, however, we refer instead to the individual subsections that trigger subsection (c)'s mandatory add-on sentences.

12—11(a)(3) and we decline defendant's request that we search for a constitutional violation elsewhere. Thus, we only consider the constitutionality of section 12—11(a)(3).

## A. Separation of Powers

Defendant first argues that section 12—11(a)(3) violates the separation of powers clause. Specifically, defendant argues that section 12—11(a)(3)'s mandatory add-on sentence of 15 years usurps the judiciary's sentencing power by removing its ability to consider aggravating and mitigating factors and to fashion a sentence that is tailored to the circumstances of the offense. We disagree.

In reaching its conclusion, the circuit court found as follows:

"The additional sentence required by the statute is an impermissible exercise of the judicial power and is in violation of the Illinois Constitution. The statute directs this [c]ourt to increase [d]efendant's sentence after the [c]ourt imposes a sentence. The sentencing scheme in 720 ILCS 5/12—11 gives sentencing power to the legislature that is not appropriate for the legislature to possess.

The legislature is imposing a restriction on this [c]ourt of its inherent power [sic] to sentence a defendant because it mandates this [c]ourt to perform a specific result [sic]. There is no consideration given in aggravation or mitigation which this [c]ourt is required to consider. The statute compels this [c]ourt to increase the sentence after this [c]ourt has made its determination; thus, this [c]ourt has no discretion in considering the evidence from the case and independently arriving at a sentence mandated by the legislature with the minimum and maximum guidelines previously set. [Citations.]"

We disagree with the circuit court's conclusion for two reasons. First, we disagree with the circuit court's conclusion that section 12—11(a)(3)'s 15-year add-on sentence removes the discretionary component from the judiciary's sentencing power. Prior to the amendment, a

defendant convicted of home invasion while armed with a firearm faced a Class X felony sentence of 6 to 30 years. Section 12—11's 15-year mandatory add-on sentence essentially raises the original sentencing range of 6 to 30 years to a range of 21 to 45 years. Thus, the circuit court retains the ability to consider aggravating and mitigating factors. Unquestionably, the legislature could have simply chosen to increase directly the original sentencing range to 21 to 45 years instead of implementing the add-on scheme. We find no substantive difference between that scenario and the legislature's decision to impose the mandatory add-on sentence.

Second, we find that mandatory sentencing schemes do not inherently usurp the judiciary's power to impose a sentence. This court has repeatedly recognized that the legislature has the power to define criminal conduct and to determine the nature and extent of criminal sentences required to protect society. *Lee*, 167 Ill. 2d at 144-45; *People v. Taylor*, 102 Ill. 2d 201, 205 (1984); *People ex rel. Carey v. Bentivenga*, 83 Ill. 2d 537, 542 (1981); *People v. Williams*, 66 Ill. 2d 179, 186 (1977); *People v. Gonzales*, 25 Ill. 2d 235, 240 (1962); *People v. Landers*, 329 Ill. 453, 457 (1927).

We have previously held that the legislature acts within its power when it imposes mandatory sentences. For example, in *People v. Taylor*, 102 Ill. 2d 201, 208 (1984), this court examined the constitutionality of a mandatory life sentence. We rejected defendant's separation of powers argument, finding that the legislature's power necessarily includes the authority to establish mandatory minimum sentences, even though such sentences, by definition, restrict the inquiry and function of the judiciary in imposing sentence. We stated that "when legislatures exercise their acknowledged power to fix punishments for crimes they necessarily limit the discretion of courts when imposing sentence." *Taylor*, 102 Ill.

2d at 208. In reaching this conclusion, we noted one of our previous cases, *People ex rel. Carey v. Cousins*, 77 Ill. 2d 531, 549 (1979). In that case, we observed:

" 'The legislature may authorize the court to exercise broad discretion in the imposition of sentences by providing for the fixing of sentences within prescribed minimum and maximum years. Or the legislature may restrict the exercise of judicial discretion in sentencing, such as by providing for mandatory sentences.' " *Taylor*, 102 Ill. 2d at 208, quoting *Cousins*, 77 Ill. 2d at 549.

We also noted in *Taylor* that mandatory sentencing is not a novel concept and that such sentencing schemes exist in a majority of states. *Taylor*, 102 Ill. 2d at 208.

Similarly, in *People v. Dunigan*, 165 Ill. 2d 235 (1995), defendant argued that his mandatory sentence of life imprisonment, mandated by the Habitual Criminal Act (currently 720 ILCS 5/33B—1 (West 2000)), improperly divested the judiciary of its sentencing power. We rejected defendant's separation of powers argument in that case. *Dunigan*, 165 Ill. 2d at 248-50. Accord *People v. Singleton*, 103 Ill. 2d 339, 345-46 (1984).

The United States Supreme Court has also rejected the constitutional necessity for discretionary sentencing ranges. See *Chapman v. United States*, 500 U.S. 453, 114 L. Ed. 2d 524, 111 S. Ct. 1919 (1991). In *Chapman*, the Court stated as follows:

"Such a sentencing scheme—not considering individual degrees of culpability—would clearly be constitutional. *Congress has the power to define criminal punishments without giving the courts any sentencing discretion.* [Citation.] Determinate sentences were found in this country's penal codes from its inception [citation] and some have remained until the present. [Citations.] A sentencing scheme providing for 'individualized sentences *rests not on constitutional commands, but on public policy enacted into statutes.*' " (Emphases added.) *Chapman*, 500 U.S. at 467, 114 L. Ed. 2d at 539, 111 S. Ct. at 1928, quoting *Lockett v. Ohio*, 438 U.S. 586, 604-05, 57 L. Ed. 2d 973, 990, 98 S. Ct. 2954, 2964-65 (1978) (plurality opinion).

Indeed, discretionary sentencing power did not always lie squarely within the judiciary. In *Mistretta v. United States*, 488 U.S. 361, 364-65, 102 L. Ed. 2d 714, 725-26, 109 S. Ct. 647, 650-51 (1989), the United States Supreme Court examined the roots of discretionary sentencing in federal law and noted that, historically, the scope of judicial discretion with respect to sentencing has been subject to legislative control. At one time, Congress embraced a fixed-sentencing scheme. Congress eventually abandoned the rigidity of fixed-sentencing and implemented a system of punishment ranges. *Mistretta*, 488 U.S. at 364, 102 L. Ed. 2d at 726, 109 S. Ct. at 651. In more recent days, significant reforms in the criminal justice system have reintroduced mandatory sentencing schemes. See *Mistretta*, 488 U.S. at 365-67, 102 L. Ed. 2d at 726-27, 109 S. Ct. at 651-52.

Defendant correctly notes that this court has previously rejected legislative encroachments on the judicial power. Defendant cites *O'Connell v. St. Francis Hospital*, 112 Ill. 2d 273 (1986) (voiding statute restricting circuit court's ability to render judgment of dismissal); *People v. Flores*, 104 Ill. 2d 40 (1984) (voiding statute limiting a circuit court's ability to proceed with a trial *in absentia*); *People v. Davis*, 93 Ill. 2d 155 (1982) (finding that statute requiring a sentencing judge to explain the reasons for imposing a particular sentence was not mandatory); *Murneigh v. Gainer*, 177 Ill. 2d 287 (1977) (voiding statute mandating instances where the circuit court must utilize its judicial contempt power); *Agran v. Checker Taxi Co.*, 412 Ill. 145 (1952) (voiding statute restricting circuit court's ability to render judgment of dismissal); *People v. Montana*, 380 Ill. 596 (1942) (voiding statute authorizing correctional facility personnel to treat a sentence as a mere recommendation). Defendant argues that those cases support his argument that section 12—11(a)(3)'s mandatory add-on sentencing scheme unconstitutionally usurps the judiciary's power.

450

We reject defendant's reliance on *O'Connell, Flores, Murneigh, Agran, Davis*, and *Montana*. Unlike the legislative encroachments we examined in those cases, the intrusion in this case does not rise to an unconstitutional level. See *Taylor*, 102 Ill. 2d at 207 (similarly distinguishing *Davis*). The legislature possesses the limited power to impose a limitation on the judiciary's sentencing power in this context. See *Taylor*, 102 Ill. 2d at 208 (finding that the legislature may exercise its power to fix punishments in such a way that it necessarily limits the judiciary's discretion in imposing sentence).

We also reject defendant's reliance on *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977), citing *People v. Bolyard*, 61 Ill. 2d 583, 589 (1975), where we stated that a proper sentence must be "based upon the particular circumstances of each individual case." We deem *Perruquet* distinguishable. First, *Perruquet* did not involve a separation of powers issue. Second, the statute we examined in *Perruquet* was punishable with a broad sentencing range. Clearly, if the legislature provides a broad sentencing range, it provides the judiciary with similarly broad sentencing discretion. See *Cousins*, 77 Ill. 2d at 549. That discretion necessarily entails not only the ability to consider aggravating and mitigating factors, but also the duty to consider such factors. See *Perruquet*, 68 Ill. 2d at 154. When the legislature implements a mandatory sentencing scheme, however, it necessarily restricts the judiciary's discretion and its ability to consider aggravating and mitigating factors. See *Taylor*, 102 Ill. 2d at 208; *Cousins*, 77 Ill. 2d at 549.

We conclude that defendant has failed to show that the legislature exceeded its authority in implementing section 12—11(a)(3)'s mandatory add-on sentencing scheme. Generally, aggravating and mitigating factors need not necessarily be a part of the sentencing equation if the legislature deems such factors inappropriate. The

legislature has the power to fix the sentence for a crime and, in turn, limit the scope of judicial discretion with respect to imposing the sentence. See *Taylor*, 102 Ill. 2d at 208; accord *Mistretta*, 488 U.S. at 364, 102 L. Ed. 2d at 725-26, 109 S. Ct. at 650-51. The add-on sentencing scheme falls within that power. Section 12—11(a)(3), as amended, does not place an unconstitutional limit on the judiciary's power to adjudicate, pronounce judgment, impose sentence, interpret the law, or carry it into effect.

For these reasons, we find that section 12—11(a)(3) does not violate the separation of powers clause.

### B. Proportionate Penalties Clause

We next consider whether section 12—11(a)(3), as amended by Public Act 91—404, violates the proportionate penalties clause. We conclude that it does not.

With respect to defendant's disproportionate penalties clause argument, the circuit court found as follows:

"This add-on sentence violates the Proportionate Penalties Clause of the Illinois Constitution. The Proportionate Penalties Clause requires that all penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.

Currently the Home Invasion statute carries a [15/20/25-life] enhancement penalty when [the] offender possesses a firearm, discharges a firearm and/or injures an occupant of the dwelling. Presently the Home Invasion statute provides a lesser penalty for an offender who intentionally causes any injury, with the exception as provided in subsection (a)(5) to any person in the dwelling. Said offender is subject to a sentence of imprisonment for six (6) to thirty (30) years. An offender who enters a dwelling while armed with a firearm and *threatens* the imminent use of force is subject to a minimum sentence of imprisonment of twenty-one (21) years. The statute creates greater penalties for offenses which cause less harm. [Citation.] The statute, when compared with other related statutes, is clearly disproportionate." (Emphasis in original.)

Again, we disagree with the circuit court's conclusion. In *People v. Lombardi*, 184 Ill. 2d 462 (1998), we noted three separate tests used to identify a proportionate penalties clause violation. First, a penalty violates the proportionate penalties clause if it is cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community. Second, a penalty is invalid under the proportionate penalties clause where similar offenses are compared, and conduct that creates a less serious threat to the public health and safety is punished more severely. Third, there is a violation of the proportionate penalties clause when identical offenses are given different sentences. *Lombardi*, 184 Ill. 2d at 474.

Defendant argues that section 12—11(a)(3) violates the proportionate penalties clause under the first and second tests. We examine these arguments in turn.

We first consider whether section 12—11(a)(3) mandates a penalty that is cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community. We find that it does not.

Defendant correctly states that the sentence mandated by section 12—11(a)(3) is severe. Following imposition of the mandatory add-on, a person convicted under this subsection is subject to a prison term of 21 to 45 years. We find, however, that the sentencing range is not so severe as to render the amended statute unconstitutional.

First, contrary to the assertion made in defendant's brief, home invasion is not a property crime. Section 12—11 contains no elements relating to theft, vandalism, or the like. 720 ILCS 5/12—11 (West 2000). Home invasion is a crime that protects persons from intruders. That is why our statutory scheme specifically categorizes home invasion as an offense directed against the person.

Second, as previously stated, the legislature has the power to determine the nature and extent of criminal sentences required to protect society. Its decisions are entitled to a presumption of constitutionality. *Bentivenga*, 83 Ill. 2d at 542. Against this backdrop, we cannot conclude that the legislature's decision to impose a 21-to-45-year sentence for the crime of home invasion violates the proportionality clause. A home should be one's sanctuary, a place where he or she should feel safe. See *People v. Harris*, 147 Ill. App. 3d 891, 896 (1986) (Pincham, J., dissenting). We are reluctant to second-guess the legislature's determination that an offender who enters another person's home while carrying a firearm should be subject to a severe penalty. This is particularly true when one considers the extreme danger arising from the presence of a firearm during the commission of a crime. In sum, we are not persuaded that section 12—11(a)(3) mandates a penalty that is cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community.

We next consider whether section 12—11(a)(3) violates the proportionate penalties clause because it mandates a penalty that is more severe than that imposed for similar yet more serious crimes. Specifically, defendant argues that section 12—11(a)(1) (home invasion while armed with a dangerous weapon other than a firearm) and section 12—11(a)(2) (home invasion and causing injury) mandate a Class X felony sentence of 6 to 30 years when *force is used* or *injury occurs*. In contrast, section 12—11(a)(3) (home invasion while armed with a firearm) mandates a Class X felony sentence of 6 to 30 years plus an additional 15 years even if the offender merely *threatens* the use of force. Thus, defendant argues, section 12—11(a)(3) imposes a more serious penalty for merely threatening the use of force (a less serious crime), while sections 12—11(a)(1) and 12—

11(a)(2) impose a less serious penalty when force or injury actually occurs (more serious crimes). We reject defendant's argument on this point.

When considering a proportionality clause challenge based on the second test, we conduct a two-step, cross-comparison analysis. First, we consider whether the purposes of the compared offenses are distinct such that comparative proportionality review is not appropriate. *Lombardi*, 184 Ill. 2d at 484; *People v. Davis*, 177 Ill. 2d 495, 506 (1997). Second, if the purposes are deemed related, we consider whether the offense with the harsher penalty is more serious than the offense with the less severe penalty. *Lombardi*, 184 Ill. 2d at 484-85.

The determination of whether a particular offense is more serious than another is not limited to an examination of the degree of harm inflicted. *Lee*, 167 Ill. 2d at 146. While that is a relevant consideration, the legislature may consider other factors such as the frequency of the crime and the high risk of bodily harm associated with it. *Lee*, 167 Ill. 2d at 146, citing *People v. Bales*, 108 Ill. 2d 182, 196 (1985). Also, the legislature may perceive a need to enact a more stringent penalty provision in order to halt an increase in the commission of a particular crime. *Lee*, 167 Ill. 2d at 146, citing *People v. Johns*, 153 Ill. 2d 436, 449 (1992), quoting *People v. Steppan*, 105 Ill. 2d 310, 320 (1985). As an institution, the legislature is better equipped than the judiciary to identify and remedy the evils confronting our society and is more capable of gauging the seriousness of an offense. *Steppan*, 105 Ill. 2d at 319; *Lee*, 167 Ill. 2d at 145; *Davis*, 177 Ill. 2d at 502-03. Thus, courts will generally defer to the legislature's judgment that a particular offense is more serious than another. *Davis*, 177 Ill. 2d at 502-03. As with any challenge to a statute's validity, defendant bears the burden of establishing each prong of this test. See *Lee*, 167 Ill. 2d at 144.

Initially, the State argues that "a cross-comparison analysis of different versions of an offense found in the same statute cannot be done." We disagree. That our courts have focused on the comparison of different offenses does not necessarily foreclose a cross-comparison of different subsections with a single statute. In fact, the State has not offered a single persuasive reason for us to reject the cross-comparison analysis in this case except to note that we have never previously applied it in this context. We disagree with the State's argument on this point. We have never applied the cross-comparison analysis in this context because we have never been faced with the issue. In any case, we can discern no reason to abandon our previous approach merely because the two provisions at issue are found within the same statute.

That is not to say, however, that we need not adapt the cross-comparison analysis to a same-statute inquiry. While we would ordinarily compare the purposes of two separate statutes, we must narrow our focus in this case and compare the purposes of the specific provisions contained in the same statute and determine whether they are sufficiently distinct such that proportionality review is inappropriate.

This court has previously held that the purpose of the home invasion statute is to protect the safety of persons in their homes. *Lombardi*, 184 Ill. 2d at 484. However, we made that determination based on an earlier and substantially different version of section 12—11, existing prior to the amendment implemented in Public Act 91—404. That version of section 12—11 provided in pertinent part as follows:

> "a) A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present or he or she knowingly enters the dwelling place of another and remains in such dwelling place

until he or she knows or has reason to know that one or more persons is present and

1) While armed with a dangerous weapon uses force or threatens the imminent use of force upon any person or persons within such dwelling place whether or not injury occurs, or

2) Intentionally causes any injury to any person or persons within such dwelling place.

\*\*\*

c) Sentence. Home invasion is a Class X felony." 720 ILCS 5/12—11 (West 1996).

Thus, the 1996 version of section 12—11 did not provide for mandatory add-on sentences nor did it distinguish between home invasions committed with a firearm and those committed without a firearm.

As we shall explain, the applicable version of section 12—11 is substantially different from the 1996 statute we examined in *Lombardi*. Therefore, our present inquiry must focus on the amended version of section 12—11 and whatever change of purpose the legislature contemplated, if any. The language of a statute is the best indication of the legislature's intent and the statute's purpose. See *Lombardi*, 184 Ill. 2d at 477. The current version of section 12—11 essentially retains the two subsections contained in the 1996 statute. The first, section 12—11(a)(1), applies where a defendant armed with a dangerous weapon, other than a firearm, uses force or threatens the imminent use of force, whether or not injury occurs. Section 12—11(a)(2) generally applies where a defendant causes injury. Both of these sections carry a 6-to-30-year sentence. The only substantive change in these subsections is that the 1996 version of section 12—11(a)(1) did not contain the "other than a firearm" language. See 720 ILCS 5/12—11 (West 1996).

In passing Public Act 91—404, the legislature essentially added three additional classifications to section 12—11. All three of these new classifications relate to firearms. Section 12—11(a)(3) applies where a defendant,

while armed with a firearm, uses or threatens force regardless of whether injury occurs. That section carries a 6-to-30-year sentence plus a mandatory add-on of 15 years. Section 12—11(a)(4) applies where a defendant actually uses or threatens imminent force, whether or not injury occurs, and defendant personally discharges a firearm. That section carries a 6-to-30-year sentence plus a mandatory add-on of 20 years. Finally, section 12—11(a)(5) applies where a defendant personally discharges a firearm and causes great bodily harm, permanent disability, permanent disfigurement, or death to another person. That section carries a 6-to-30-year sentence plus a mandatory add-on of 25 years to life.

By comparing section 12—11's current and previous forms, it becomes clear that the legislature, while not labeling it as such, essentially intended to break the offense of home invasion into two distinct categories: offenses committed without a firearm and offenses committed with a firearm. With respect to the former, we conclude that the purpose of subsections (a)(1) and (a)(2) is still to protect the safety of persons in their homes. This is obvious when one notes the similarities between the earlier version of section 12—11 and the language found in subsections (a)(1) and (a)(2). With respect to the latter, there is no question that subsection (a)(3) is still intended to protect people in their homes. Subsection (a)(3), however, has a second, more specific purpose. The legislature clearly added subsection (a)(3) in an effort to deter the use of firearms in conjunction with home invasions. Thus, subsection (a)(3) is intended to protect the safety of people in their homes *from intruders carrying firearms* and to deter such offenders by imposing a particularly severe penalty.

Our conclusion is supported by the legislative history of Public Act 91—404. Public Act 91—404 was unanimously passed by our legislature and mandates stricter

sentences for enumerated crimes *when they are committed with a firearm.* The amendments impose the 15/20/25-life add-on sentencing scheme on the offenses of aggravated kidnaping (720 ILCS 5/10—2 (West 2000)); aggravated battery of a child (720 ILCS 5/12—4.3 (West 2000)); home invasion (720 ILCS 5/12—11 (West 2000)); aggravated criminal sexual assault (720 ILCS 5/12—14 (West 2000)); predatory criminal sexual assault of a child (720 ILCS 5/12—14.1 (West 2000)); armed robbery (720 ILCS 5/18—2 (West 2000)); and aggravated vehicular hijacking (720 ILCS 5/18—4 (West 2000)). Thus, Public Act 91—404 included a package of amendments implementing sweeping changes to criminal sentences for the purpose of deterring and penalizing the illegal use of firearms.

One of the bill's sponsors, Senator Dillard, stated during the legislative debates that the add-on sentencing scheme contained in the package of amendments would "send a very strong message that we will not tolerate the use or possession of a firearm when committing a crime in Illinois and that anybody that has one is going to do significant, significant time." 91st Ill. Gen. Assem., Senate Proceedings, March 25, 1999, at 286 (statement of Senator Dillard). Senator Dillard added:

> "The purpose behind the sentence enhancement \*\*\* for the use of a firearm in the commission of specified serious felonies is to deter the use of firearms in the commission of those violent and serious crimes. \*\*\* It's the intent of this bill that additional firearm enhancements are necessary and appropriate for deterring use of a firearm in the commission of our most serious offenses." 91st Ill. Gen. Assem., Senate Proceedings, March 25, 1999, at 286-87 (statements of Senator Dillard).

While one might properly conclude that the general purpose of the statute as a whole has not changed, we nevertheless find that the new firearms provisions serve a second, more specific purpose and target a unique type of danger. Given the pervasive and enhanced danger aris-

ing from an intruder's possession of a firearm, the legislature's superior position to identify and address the evils of gun-related violence, and the presumptive constitutionality of a legislative enactment, we conclude that the purpose of subsections (a)(1) and (a)(2) are sufficiently distinct from that of subsection (a)(3) to make proportionality review inappropriate.

We therefore conclude that defendant has failed to carry his burden of proving that section 12—11(a)(3) violates the proportionate penalties clause of the Illinois Constitution.

## II. CONCLUSION

Defendant has failed to show that section 12—11(a)(3)'s add-on sentence of 15 years' imprisonment violates the separation of powers clause. We find that section 12—11(a)(3)'s add-on sentencing scheme does not completely divest the circuit court of its ability to consider aggravating and mitigating factors. Further, a mandatory sentence is not *per se* unconstitutional.

Defendant has also failed to show that section 12—11(a)(3) violates the proportionate penalties clause. We find that a 21-to-45-year sentence for violating section 12—11(a)(3) is not cruel or degrading, nor does it shock the moral conscience. We further find that the firearms provision contained in section 12—11(a)(3) has a distinct purpose from sections 12—11(a)(1) and 12—11(a)(2) such that proportionality review is inappropriate.

For these reasons, we reverse the circuit court and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*